IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| MONICA M. GALLEGOS, Individually, | § | |
| and as Wrongful Death Beneficiary and as | § | |
| Representative of the Estate of A.G.R., | § | |
| Deceased Minor; | § | |
|     *Plaintiff* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. __2-24-cv-00070__ |
| | § | |
| DANIEL DEFENSE, LLC; | § | |
| DANIEL DEFENSE HOLDINGS, LLC; | § | |
| M.C. DANIEL GROUP, INC.; | § | |
| FIREQUEST INTERNATIONAL, INC.; | § | |
| FLASH CO., INC.; EOTECH, LLC; | § | |
| PROJECT ECHO HOLDINGS, LLC d/b/a | § | |
| AMERICAN HOLOPTICS; | § | |
| KOUCAR MANAGEMENT, LLC; and | § | |
| OASIS OUTBACK, LLC | § | |
|     *Defendants* | § | |

**DANIEL DEFENSE, LLC f/k/a DANIEL DEFENSE, INC., DANIEL DEFENSE
HOLDINGS, LLC, AND M.C. DANIEL GROUP, INC.'S NOTICE OF REMOVAL**

COME NOW Daniel Defense, LLC f/k/a Daniel Defense, Inc., Daniel Defense Holdings,

LLC, and M.C. Daniel Group, Inc. (collectively here, "Daniel Defense"), defendants in a cause

styled: No. 2024-05-35553-CV*; Monica M. Gallegos, Individually as Wrongful Death Beneficiary*

*and as Representative of the Estate of A.G.R., deceased minor v. Daniel Defense, LLC, Daniel*

*Defense, Inc., Daniel Defense Holdings, LLC, M.C. Daniel Group, Inc., Firequest International,*

*Inc., Flash Co., Inc. EOTech, LLC, Project Echo Holdings, LLC, Koucar Management, LLC, and*

*Oasis Outback, LLC*; in the 38th District Court, Uvalde County, Texas and, pursuant to the terms

and provisions of 28 U.S.C. §§ 1441(a) and 1446(b), hereby file this Notice of Removal of said

1

cause to the United States District Court for the Western District of Texas, Del Rio Division.  As grounds for removal, Daniel Defense respectfully shows the Court as follows:[1]

**I.**
**NATURE OF THE CASE AND BASIS FOR REMOVAL**

Plaintiff originally filed this lawsuit on May 24, 2024.  This lawsuit arises out of the May 24, 2022 shooting at Robb Elementary School.  Plaintiff sues Defendants allegedly connected to the manufacture and sale of the rifle, and other components, used in the shooting.  Plaintiff asserts various claims against Defendants and requests actual and exemplary damages.  *See* Ex. A-2 (Plaintiff's Petition).

Plaintiff has yet to serve Daniel Defense, LLC, Daniel Defense, Holdings, LLC, and M.C. Daniel Group, Inc.

The basis for removal is diversity jurisdiction.  The only ground for defeating diversity jurisdiction is the presence of Defendant Oasis Outback, LLC ("Oasis Outback") who is alleged to be a Texas limited liability company.  Ex. A-2, ¶ 31.  As shown below, however, Plaintiff improperly joined Oasis Outback, and there is complete diversity between Plaintiff and the remaining Defendants.  Additionally, removal is not precluded by the "forum-defendant rule."

Daniel Defense timely removes this case prior to receiving service.

Pursuant to 28 U.S.C. § 1441, Daniel Defense removes this action to the District Court of the United States for the district and division embracing the county where this state court action is pending.

---

[1] Daniel Defense attaches as Exhibit A to this Notice of Removal its Index of Matters Being Filed that includes the docket sheet of the underlying state court action and all process, pleadings, and orders served on Daniel Defense. However, as previously noted, Daniel Defense has not yet received service.  A copy of the Certificate of Interested Persons and Rule 7.1 Disclosure Statement is attached as Exhibit B.

168028

Daniel Defense will serve written notice of the removal on Plaintiff and a copy will be filed with the Uvalde County District Clerk promptly after this Notice of Removal is filed.

This case is properly removed to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 because Daniel Defense satisfied the procedural requirements for removal.  And as demonstrated below, this Court has subject matter jurisdiction over this diversity action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and the only properly joined parties are citizens of different states.

## II.
## DIVERSITY JURISDICTION

In support of this Notice, Daniel Defense shows that because: (1) the amount in controversy exceeds $75,000.00, and (2) Plaintiff and all the Defendants (apart from the improperly joined Oasis Outback) are citizens of different states, there is complete diversity of citizenship.  Thus, removal is proper because the diversity requirements are met, this removal is filed within thirty (30) days of receiving service of suit, and it has been less than one year since this action was originally commenced.  *See* 28 U.S.C. § 1446(b)-(c).

**A.     The amount in controversy exceeds $75,000.00.**

Plaintiff alleges she seeks damages in excess of $1,000,000.00.   Ex. A-2, ¶ 32. Accordingly, the amount in controversy requirement is satisfied.

**B.     There is complete diversity between Plaintiff and all Defendants apart from improperly joined Oasis Outback.[2]**

Plaintiff alleges she is a citizen of Texas.  Ex. A-2, ¶ 19.

---

[2] "[D]iversity of citizenship must exist *both* at the time of filing in state court *and* at the time of removal to federal court."  *Ashford v. Aeroframe Services, L.L.C.*, 907 F.3d 385, 386 (5th Cir. 2018) (italics in original); *see In re Levy*, 52 F.4th 244, 246 (5th Cir. 2022) (same); *Waterbridge Tex. Operating, LLC v. Petro Guardian, LLC*, No. 23-CV-00034-DC-DF, 2024 WL 1580199, at *4 (W.D. Tex. Apr. 11, 2024), *report and recommendation adopted*, No. 23-CV-00034-DC, 2024 WL 1994261 (W.D. Tex. May 6, 2024) (same).

168028

Defendants Daniel Defense, LLC f/k/a Daniel Defense, Inc. represents it is a limited liability company organized in the State of Georgia.  The sole member of Daniel Defense, LLC is Daniel Defense, Holdings, LLC which is a limited liability company organized in the State of Georgia.  The members of Daniel Defense Holdings, LLC are M.C. Daniel Group, Inc., Marty Daniel, and Servant Foundation d/b/a The Signatry. M.C. Daniel Group, Inc. is a corporation organized in Georgia with its principal place of business in Georgia.  Marty Daniel is an individual who is domiciled in Georgia.  Servant Foundation d/b/a The Signatry is a corporation organized in the State of Missouri with its principal place of business in Kansas.  As of the date this lawsuit was filed, and the date of removal, no member of Defendant Daniel Defense, LLC or Daniel Defense Holdings, LLC is a citizen of Texas.  Ex. C.

Plaintiff alleges Defendant Firequest International, Inc. is an Arkansas corporation.  Ex. A-2, ¶ 24.  Firequest International, Inc.'s principal place of business is in Arkansas.

Plaintiff alleges Defendant Flash Co., Inc. is a Colorado corporation.  Ex. A-2, ¶ 25.  Flash Co., Inc.'s principal place of business is in Colorado.

Plaintiff alleges EOTech, LLC is limited liability company organized in Michigan.  Ex. A-2, ¶ 27.  According to Michigan state filings, the listed member of EOTech, LLC is a Michigan resident.  Ex. D.

Plaintiff alleges Project Echo Holdings, LLC d/b/a American Holoptics is a limited liability company organized in Michigan.  Ex. A-2, ¶ 28.  According to Michigan state filings, the listed member of Project Echo Holdings, LLC is a Michigan resident.  Ex. E.

Plaintiff alleges Koucar Management, LLC is a limited liability company organized in Michigan.  Ex. A-2, ¶ 29.  According to Michigan state filings, the listed member of Koucar Management, LLC is a Michigan resident.  Ex. F.

4

**C.      Oasis Outback is improperly joined and, thus, its citizenship is not considered.**

Plaintiff alleges Oasis Outback is a Texas limited liability company with its principal place of business in Uvalde, Texas.  Ex. A-2, ¶ 31.  According to publicly available records, at least one member of Oasis Outback is a Texas citizen.  Ex. G.  However, because Plaintiff has improperly joined Oasis Outback, complete diversity remains, and the Court has jurisdiction over this matter.

**1.      The standard for improper joinder.**

In *Smallwood*, the Fifth Circuit reaffirmed the two ways to establish improper joinder, including:

> "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court."  Only the second way is before us today, and we explained in *Travis v. Irby* that the test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.  ***To reduce possible confusion, we adopt this phrasing of the required proof and reject all others***, whether the others appear to describe the same standard or not.

*Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*) (emphasis added); *see Pace v. Cirrus Design Corp.*, 93 F.4th 879, 889 (5th Cir. 2024) (same); *Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 473 (5th Cir. 2022) (same); *Mimosa Properties, LLC v. Third Coast Ins. Co.*, No. DR-22-CV-008–AM/CW, 2023 WL 11691700, at *3 (W.D. Tex. Mar. 31, 2023) (same); *Morris v. De Luna*, No. DR-20-CV-025-AM-VRG, 2021 WL 2980715, at *2-3 (W.D. Tex. Feb. 4, 2021), *report and recommendation adopted*, 2021 WL 2981301 (W.D. Tex. Mar. 18, 2021) (same).

Under the second prong, the standard is whether the defendant has demonstrated that there is ***no reasonable basis*** to predict that the plaintiff might be able to recover against the in-state defendant.  "[A] removing defendant [need not demonstrate an absence of *any possibility* of

recovery in state court] . . . the defendant must demonstrate only that there is *no reasonable basis* for predicting that the plaintiff will recover in state court." *Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 405 (5th Cir. 2004) (emphasis in original); *Advanced Indicator & Mfg., Inc.*, 50 F.4th at 473; *Morris*, 2021 WL 2980715, at *2-3.  A "mere theoretical possibility of recovery under local law" will not preclude a finding of improper joinder.  *Badon v. RJR Nabisco, Inc.*, 236 F.3d 282, 286 n. 4 (5th Cir. 2000); *Smallwood*, 385 F.3d at 573, n. 9; *Morris*, 2021 WL 2980715, at *3.[3]

To determine whether there is a reasonable basis to recover under state law, under the second prong, the Fifth Circuit outlined two separate methods.

> There has also been some uncertainty over the proper means for predicting whether a plaintiff has a reasonable basis of recovery under state law. A court may resolve the issue in one of two ways. **The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant**. . . .  That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry.

*Smallwood*, 385 F.3d at 573 (emphasis added).  Daniel Defense briefly discusses the standards for each method.

### a.      Improper joinder based on a Rule 12(b)(6) analysis.

---

[3] In considering whether a plaintiff has a reasonable basis for recovery on at least one claim under state law, the district court is limited to the causes of action and allegations asserted in the petition on file at the time of the removal.  "Post-removal filings may not be considered, however, when or to the extent that they present new causes of action or theories not raised in the controlling petition filed in state court."  *Griggs v. State Farm Lloyds*, 181 F.3d 694, 700 (5th Cir. 1999); *see Ayala v. Enerco Group, Inc.*, 569 Fed. Appx. 241, 245 (5th Cir. 2014) (same); *Barrera v. Allstate Ins. Co.*, No. DR-16-CV-0037-AM-VRG, 2017 WL 3274469, at *7 (W.D. Tex. Mar. 6, 2017), *report and recommendation adopted*, 2017 WL 3274357 (W.D. Tex. Mar. 21, 2017) (same).

When considering improper joinder, federal pleadings standards apply.  *International Energy Ventures Mgmt., L.L.C. v. United Energy Group, Ltd.*, 818 F.3d 193, 208 (5th Cir. 2016); *Pena v. City of Rio Grande City*, 879 F.3d 613, 617 (5th Cir. 2018);  *Morris*, 2021 WL 2980715, at *3.  *Twombly* and *Iqbal* provide the parameters for federal pleading standards.

First, the district court should identify and disregard "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and ***a formulaic recitation of the elements of a cause of action will not do***") (emphasis added); *see also Rios v. City of Del Rio,* 444 F.3d 417, 420-21 (5th Cir. 2006) (explaining that pleadings must contain either direct allegations on every material point necessary to sustain a recovery or else contain allegations from which an inference fairly may be drawn that sufficient evidence will be introduced at trial); *see Cook v. City of Tyler*, 402 F.Supp.3d 339, 341 (E.D. Tex. 2019), *appeal dismissed sub nom.*, 974 F.3d 537 (5th Cir. 2020) (stating "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("In order to avoid dismissal for failure to state a claim, however, ***a plaintiff must plead specific facts, not mere conclusory allegations***.  We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (emphasis added).  Stated simply, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Next, the district court "consider[s] the factual allegations in [the plaintiffs'] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681; *Moini v. Univ. of Tex. at Austin*, No. A-10-CA-180-SS, 2011 WL 90472, at *12 (W.D. Tex. Jan. 10, 2011).

### b.    Improper joinder based on piercing the pleadings.

A summary inquiry is appropriate when the face of the pleadings appears to support joinder, but certain jurisdictional facts are misstated or omitted. *Smallwood*, 385 F.3d at 573.  In such cases, the court has the discretion to pierce the pleadings and conduct a summary inquiry in order "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id*. at 573-74; *see also B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 551 (5th Cir. 1981) (evidentiary hearing appropriate where removing party contends plaintiff's pleadings contain misrepresentations of jurisdictional fact).  Summarily stated:

> . . . where a plaintiff has stated a claim but "misstated or omitted discrete facts that would determine the propriety of joinder," a court may pierce the pleadings and conduct a summary inquiry considering summary judgment-type evidence to determine whether a plaintiff has a reasonable possibility of recovery in state court.

*Figueroa v. Gen. Motors Corp.*, No. EP07CV297PRM, 2008 WL 4372700, at *3 (W.D. Tex. Sept. 15, 2008); *see also Badon v. RJR Nabisco, Inc.*, 224 F.3d at 390; *LeJeune v. Shell Oil Co.*, 950 F.2d 267, 271 (5th Cir. 1992) ("A court is to pierce the pleadings to determine whether, under controlling state law, the non-removing party has a valid claim against the non-diverse parties.").

The removing party may submit evidence outside the pleadings in order to establish that a plaintiff has no reasonable basis to expect recovery from the resident defendant.  *Badon v. RJR Nabisco, Inc.*, 224 F.3d at 390.  For example, a defendant may submit affidavits and deposition transcripts in support of its removal petition.  *B., Inc.*, 663 F.2d at 549; *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir. 1990).  District courts may consider summary judgment-type

8

evidence to identify "discrete facts" that would show that a defendant was improperly joined. *Anderson v. Georgia Gulf Lake Charles, LLC*, 342 Fed. Appx. 911, 915-916 (5th Cir. 2009).

### 2.  Oasis Outback is improperly joined.

Complete diversity does not exist if Oasis Outback is properly joined.  Plaintiff asserts claims against Oasis Outback for negligence and gross negligence.  Ex. A-2, ¶¶ 423-439, 440-443. But, as shown below, Plaintiff has no reasonable probability of recovering against Oasis Outback on these claims and, thus, it is improperly joined.

When a plaintiff's pleadings demonstrate than an in-state defendant is immune from suit, courts will hold such defendants as improperly joined and deny requests to remand.  *See Odar v. Felix Energy Holdings II LLC*, No. PE:21-CV-00079-DC-DF, 2022 WL 1115407, at *8–9 (W.D. Tex. Apr. 12, 2022), *report and recommendation adopted*, 2022 WL 1514644 (W.D. Tex. May 13, 2022) (concluding in-state defendant was improperly joined and diversity jurisdiction remained when petition demonstrated in-state defendant was immune from claims under the Texas Worker's Compensation Act); *Sanchez v. Wells Fargo Bank, N.A.*, No. SA-20-CV-188-XR, 2020 WL 2086549, at *2–3 (W.D. Tex. Apr. 30, 2020) (holding in-state defendant was improperly joined when plaintiff's allegations demonstrated attorney immunity); *L'Amoreaux v. Wells Fargo Bank, N.A.*, No. A-13-CV-052-LY, 2013 WL 12098738, at *1–2 (W.D. Tex. July 15, 2013), *aff'd sub nom.*, 755 F.3d 748 (5th Cir. 2014) (finding improper joinder when in-state defendant had attorney immunity from plaintiff's claims); *see also Esparza v. Paragon Shipping, Inc.*, No. 2:13-CV-289, 2013 WL 6835239, at *5–7 (S.D. Tex. Dec. 23, 2013) (denying motion to remand and concluding in-state defendant (a government entity) was improperly joined because plaintiff's petition failed to demonstrate waiver of governmental immunity).

Plaintiff has no reasonable probability of recovery against Oasis Outback because her claims against it are barred under by the Protection of Lawful Commerce in Arms Act (15 U.S.C. § 7901 *et seq.*) (the "PLCAA"), and Plaintiff's only alleged exception is inapplicable. Accordingly, Oasis Outback is improperly joined, and its presence does not preclude diversity jurisdiction.

### a.   Plaintiff's claims against Oasis Outback are qualified actions under the PLCAA.

Oasis Outback is entitled to immunity from Plaintiff's claims because they constitute a "qualified civil liability action" barred under the PLCAA.  With the PLCAA, Congress prohibited bringing any "qualified civil liability actions" in federal or state court.

> (a) In general
>
> A *qualified civil liability action* may not be brought in any Federal or State court.

15 U.S.C. § 7902(a) (emphasis added).  Congress defined a "qualified civil liability action" as follows:

> The term "qualified civil liability action" *means a civil action or proceeding or an administrative proceeding brought by any person against a manufacturer or seller of a qualified product, or a trade association, for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of a qualified product by the person or a third party* . . .

*Id.* at § 7903(5)(A) (emphasis added).

The PLCAA clearly prohibits civil actions against manufacturers and sellers for actual and punitive damages, injunctive or declaratory relief, as well as "other relief."  *Id.*  The statute provides immunity from suit as the Texas Supreme Court explained in *Academy*.

> "By its terms, the Act bars plaintiffs from courts for the adjudication of qualified civil liability actions, allowing access for only those actions that

fall within the Act's exceptions." ***The PLCAA thus "immunizes a specific type of defendant from a specific type of suit" and "bars the commencement or the prosecution of qualified civil liability actions.***"

*In re Academy, Ltd.*, 625 S.W.3d 19, 35 (Tex. 2021) ("*Academy*") (quoting *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397–398 (2d Cir. 2008)) (emphasis added); *see Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009) (stating the PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims").

Plaintiff's suit against Oasis Outback is a qualified civil liability action and, thus, is barred.

### (1)    Oasis Outback is a "seller" under the PLCAA.

Under the PLCAA, a protected "seller" includes "a dealer . . . who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18" (*i.e.*, the Gun Control Act of 1968 ("GCA")), and "a person engaged in the business of selling ammunition . . . at the wholesale or retail level." 15 U.S.C. § 7903(6)(b) & (c).  The GCA, in turn, defines the term "dealer" to mean "any person engaged in the business of selling firearms at wholesale or retail [or] any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms."  18 U.S.C. § 921(a)(11).

The PLCAA likewise incorporates the GCA's definition of the term "engaged in the business."  15 U.S.C. § 7903(1).  The GCA defines "engaged in business," "as applied to a dealer in firearms," to mean "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms . . . ."  18 U.S.C. § 921(a)(21)(C).  Additionally, as applied to a dealer, "engaged in the business" means, in relevant part, "a person who devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit . . . ."  18 U.S.C. § 921(a)(21)(D).

11

Here, there can be no question that Oasis Outback is a "seller" under the PLCAA.  Plaintiff plainly alleges that Oasis Outback is a "dealer" "engaged in business" as a "dealer in firearms." 15 U.S.C. § 7903(6)(b) & (c); 18 U.S.C. § 921(a)(21)(C) & (D).  Specifically, Plaintiff alleges Oasis Outback sold firearms *and* ammunition to the Assailant and helped facilitate the transfer of the Daniel Defense rifle he purchased online.  Ex. A-2, ¶ 324 (alleging Assailant purchased firearm and ammunition from Oasis Outback); ¶ 431 (alleging "Oasis Outback had a duty to exercise reasonable car in suppling firearms, selling firearms, transferring firearms, installing firearms accessories, and selling or suppling ammunition"); *id.*, ¶ 438 (alleging Oasis Outback is liable for supplying guns, scope and ammunition to Assailant).  She also alleges Oasis Outback is a federal firearms licensee.  *Id.*, ¶ 423.  Accordingly, it cannot be disputed that Oasis Outback is a firearms "dealer" and a "seller" for purposes of the PLCAA.

### (2) Oasis Outback is a "seller" of "a qualified product" under the PLCAA.

The PLCAA defines "qualified product" to mean "a firearm . . . *or* ammunition . . . *or* a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4) (emphasis added).  As discussed, Plaintiff alleges that Oasis Outback is a "seller" of both firearms and ammunition.  Ex. A-2, ¶¶ 423, 431, 438.  ***That is where the analysis begins and ends.***  Those allegations alone demonstrate that Oasis Outback is a protected "seller of a qualified product."  Therefore, this is a "qualified civil liability action."

### (3) Plaintiff's attempt to plead her claims around the PLCAA fails.

Because the firearms and ammunition Oasis Outback sold plainly are "qualified product[s]," Plaintiff attempts to circumvent the PLCAA by alleging liability in connection with the EOTech optical sight.  Plaintiff avers that Oasis Outback negligently installed the sight.  Ex.

A-2, ¶ 438.  Plaintiff further alleges Oasis Outback did not sell the sight, that the sight is not a "qualified product," and, therefore, the PLCAA is inapplicable with respect to her claim for "negligent installation."  *Id.*, ¶¶ 428-430.  Plaintiff's reading of the PLCAA, however, fails for at least two independent reasons.

***First***, Plaintiff's novel interpretation not only contradicts the PLCAA's plain text, but also would create an exception so broad that the statutory immunity would be rendered useless, undermining Congress' express intent.  The statute provides that the "seller of ***a*** qualified product" is immune from a civil claim for damages "resulting from the criminal or unlawful misuse of ***a*** qualified product by the person or a third party." 15 U.S.C. § 7903(5)(A) (emphasis added).  Congress' decision to use the indefinite article "a" in both relevant clauses reflects a clear legislative intent to immunize qualified sellers from liability resulting from a third-party's unlawful misuse of ***any*** "qualified product."  Thus, contrary to Plaintiff's theory, it does not matter in the first instance whether the sight is a "component" of a firearm under the PLCAA—it is undisputed that Oasis Outback, a qualified seller, sells "qualified product[s]" and Plaintiff seeks damages resulting from the Assailant's unlawful use of "qualified product[s]."

Had Congress intended to limit the PLCAA's immunity on a product-by-product basis, as Plaintiff suggests, it would have definitively referred to ***the*** qualified product.  Thus written, a "qualified civil liability action" would have been defined as a civil action (i) "by a person," (ii) "against a seller of a qualified product," (iii) "for damages . . . or other relief," (iv) "resulting from the criminal or unlawful misuse of ***[the]*** qualified product by the person or a third party."  But that is not what the statute instructs.

Instead, the statute's definition of "qualified product" clearly applies to not only the firearm and component parts of a firearm in their original condition, but also to the firearm as modified by

13

accessories and aftermarket parts, particularly those installed by the original "seller" or other "seller[s]."  This interpretation is consistent not only with the PLCAA's plain text, but also its express purpose—to "prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearm products or ammunition products by others when the product functioned as designed and intended."  15 U.S.C. § 7901(b)(1).  Plaintiff's novel interpretation would create an exception so broad as to render the PLCAA effectively useless, and the Court should therefore reject it.

*Second*, and independently, a firearm sight is a "component part of a firearm" under the PLCAA.  *See* 15 U.S.C. § 7903(4).  Because the PLCAA does not define "component part of a firearm," the Court "must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009) (quotation marks omitted); *see also Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997) (explaining that when interpreting a statute, a court must consider "the broader context of the statute as a whole").  When used as an adjective, as in the PLCAA, the word "component" means "serving or helping to constitute."  *Component*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/component (last accessed July 1, 2024).  Its synonym is "constituent."  "Part," in turn, is defined as "one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole."  *Part*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/part (last accessed July 1, 2024).

A firearm's sight satisfies these definitions.  According to ordinary meaning, sights are "component part[s] of a firearm" because they "form, compose, or make up" firearms, and, thus,

are "one of the portions" into which firearms may be divided.  *See Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 449 n.11 (2007) ("'Component' is commonly defined as 'a constituent part,' 'element,' or 'ingredient'") (quoting 2 WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 466 (1981)); *United States v. Gonzalez*, 792 F.3d 534, 537 (5th Cir. 2015) ("[T]he common meaning of 'component,' . . . is 'a part or element of a larger whole, especially a part of a machine or vehicle'") (quoting OXFORD DICTIONARY OF ENGLISH 357 (3d ed. 2010)). This interpretation is supported by the decisions of other courts that a firearm's magazine and its stock are "component parts" under the PLCAA.  *See, e.g.*, *In re Academy, Ltd.*, 625 S.W.3d 19, 29 (Tex. 2021) (quoting 15 U.S.C. § 7903(4), 5(A), and holding that a magazine is a qualified product); *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1189 (D. Nev. 2018) (holding that a "bump stock" is a "qualified product" because a stock is an "integral component" of a firearm, regardless of the fact that a bump stock replaces the original stock).  A sight is likewise an "integral component" of any firearm, and particularly a rifle, regardless of whether the sight is original or an aftermarket modification.  *See Prescott*, 341 F. Supp. 3d at 1189.

The context in which the PLCAA was enacted, and its enumerated purposes reinforce what the text makes clear.  The PLCAA was enacted for the express purpose of prohibiting civil lawsuits against manufacturers of firearms, ammunition, and component parts of firearms or ammunition for damages "resulting from the misuse of their products by others."  *See* 15 U.S.C. § 7901 (Preamble).  Congress incorporated specific findings underscoring that purpose, including that lawsuits seeking to hold sellers liable for a third-party's illegal misuse of firearms or component parts of firearms impose an undue burden on interstate commerce, and firearm industry members should not be liable for harm caused by the criminal misuse of products that function as designed. *See, e.g.*, *id.* § 7901(a)(5) (finding that sellers of firearms and component parts "are not, and should

not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended"); *id.*, § 7901(b)(1) (stating the PLCAA's purpose "[t]o prohibit causes of action against . . . dealers, and importers of firearms or ammunition products, . . . for the harm solely caused by the criminal or unlawful misuse of firearms products or ammunition products by others when the product functioned as designed and intended").

Quite evidently, by enacting the PLCAA, Congress intended to provide broad protections to the firearms industry and to prevent lawsuits arising from the criminal misuse of lawfully manufactured and sold products. *See, e.g., Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1285 (C.D. Cal. 2006). Concluding that a sight—even an aftermarket one—is a component part of a firearm is entirely consistent with the context and purpose of the PLCAA. Under Plaintiff's faulty interpretation, by contrast, the PLCAA would not apply to manufacturers and sellers of aftermarket component parts of firearms (including sights), directly contravening Congress' stated intent.

The only court to disagree based its holdings on tariff or customs classification case that construed the meaning or definition of the terms "parts" and "accessories." *Auto-Ordnance Corp. v. United States*, 822 F.2d 1566, 1570 (Fed. Cir. 1987). The Texas Supreme Court has warned against relying on such cases when construing legislation directed to Second Amendment rights. *See Academy*, 625 S.W.3d at 26. (rejecting reliance on trade cases to interpret the GCA).

The PLCAA was enacted to prevent this precise type of lawsuit, and the Act's purposes would not be furthered by following Plaintiff's legally unsupported argument.

### (4) This case is a qualified civil liability action.

In sum, Plaintiff's Petition satisfies all five elements of a "qualified civil liability action" against Oasis Outback. ***First***, the petition is indisputably a "civil action or proceeding" because it

is a lawsuit filed in state court.  **Second**, the action is brought by a person –Plaintiff.  **Third**, the petition is brought against the seller of a qualified product.  *See* Ex. A-2 ¶ 324 (alleging Oasis Outback sold firearm and ammunition to the Assailant); *id.*, ¶ 423 (alleging Oasis Outback is a licensed seller of firearms).  **Fourth**, Plaintiff seeks actual and exemplary damages from Oasis Outback.  *Id.*, ¶¶ 439, 443, 446-453.  **Fifth**, Plaintiff's claims against Oasis Outback result from "the criminal or unlawful use of a qualified product by" a "third party."  *Id.*, ¶ 347 (stating "the Shooter murdered nineteen fourth-grade students and two teachers").

Plaintiff's action against Oasis Outback is within the PLCAA's definition of a "qualified civil liability action."  Thus,' Plaintiff has no reasonable probability of success against Oasis Outback, and it is improperly joined unless Plaintiff can adequately plead a statutory exception. However, as shown below, Plaintiff cannot plead a viable exception.

> c.    **The negligent entrustment exception does not apply as a matter of law.**

The PLCAA provides six exceptions to qualified civil liability actions:

> **(i)** an action brought against a transferor convicted under section 924(h) of Title 18, or a comparable or identical State felony law, by a party directly harmed by the conduct of which the transferee is so convicted;
>
> **(ii)** an action brought against a seller for negligent entrustment or negligence per se;
>
> **(iii)** an action in which a manufacturer or seller of a qualified product knowingly violated a State or Federal statute applicable to the sale or marketing of the product, and the violation was a proximate cause of the harm for which relief is sought, including--
>
> > **(I)** any case in which the manufacturer or seller knowingly made any false entry in, or failed to make appropriate entry in, any record required to be kept under Federal or State law with respect to the qualified product, or aided, abetted, or conspired with any person in making any false or fictitious oral or written statement with respect to any fact material to

the lawfulness of the sale or other disposition of a qualified product; or

**(II)** any case in which the manufacturer or seller aided, abetted, or conspired with any other person to sell or otherwise dispose of a qualified product, knowing, or having reasonable cause to believe, that the actual buyer of the qualified product was prohibited from possessing or receiving a firearm or ammunition under subsection (g) or (n) of section 922 of Title 18;

**(iv)** an action for breach of contract or warranty in connection with the purchase of the product;

**(v)** an action for death, physical injuries or property damage resulting directly from a defect in design or manufacture of the product, when used as intended or in a reasonably foreseeable manner, except that where the discharge of the product was caused by a volitional act that constituted a criminal offense, then such act shall be considered the sole proximate cause of any resulting death, personal injuries or property damage; or

**(vi)** an action or proceeding commenced by the Attorney General to enforce the provisions of chapter 44 of Title 18 or chapter 53 of Title 26.

15 U.S.C. § 7903(5)(A).

Plaintiff asserts the PLCAA's negligent entrustment exception preserves her claims against Oasis Outback.  *See* Ex. A-2, ¶¶ 424-425.  This allegation fails as a matter of law.

While the PLCAA recognizes negligent entrustment as an exception to immunity, it does not create a cause of action.  15 U.S.C. § 7903(5)(C) (PLCAA does not create "public or private cause[s] of action or remed[ies]."); *Academy*, 625 S.W.3d at 30.  "Accordingly, courts generally apply state law on negligent-entrustment claims in evaluating whether the exception applies." *Id.*; *see also Timperio v. Bronx-Lebanon Hosp. Ctr.*, 384 F. Supp. 3d 425, 434 (S.D.N.Y. 2019) (plaintiff must satisfy state law requirements for exception to apply); *Phillips v. Lucky Gunner, LLC*, 84 F.Supp.3d 1216, 1225 (D. Colo. 2015) ("Although the PLCAA identifies negligent

18

entrustment as an exception to immunity, it does not create a cause of action. Accordingly, the claim arises under state law.").

Texas does not recognize a negligent entrustment action against the seller of a product. *Nat'l Convenience Stores, Inc. v. T.T. Barge Cleaning Co.*, 883 S.W.2d 684, 687 (Tex. App—Dallas 1994, writ denied) ("[W]e find negligent entrustment does not apply to the sale of a chattel."); *Jaimes v. Fiesta Mart, Inc.*, 21 S.W.3d 301, 304 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Allen v. Wal-Mart Stores, LLC*, 2017 WL 978702, *11 (S.D. Tex. Mar. 14, 2017) (collecting cases).

The Texas Supreme Court recently affirmed this principle.  In *Academy*, the Court rejected an argument that the PLCAA's negligent entrustment exception applied to Academy's sale of a gun to a mass shooter (at Sutherland Springs) because Academy allegedly "supplied the rifle to [the shooter] with reason to know that he was likely to use it in a manner involving unreasonable risk of harm." *Academy*, 625 S.W.3d at 30.  The Texas Supreme Court instructed: "[N]o viable cause of action exists under Texas law for negligent entrustment based on a sale of chattel. In turn, we hold that the plaintiffs may not rely on the negligent-entrustment exception to pursue their claims." *Id.* at 30.

Plaintiff asserts similar allegations here, and Texas law compels the same conclusion as in *Academy*.  *Compare id. with* Ex. A-2, ¶ 324 (alleging Assailant purchased firearms and ammunition from Oasis Outback), ¶ 328 (alleging Assailant received subject rifle at Oasis Outback), ¶ 425 (stating Plaintiff has plead facts establishing Oasis Outback's conduct constituted negligent entrustment).  Plaintiff alleges the Assailant purchased the firearms, ammunition, trigger and sight used in his attack.  In line with *Academy*, no viable cause of action exists for negligent entrustment (or sale/transfer) of a chattel in Texas.   Accordingly, Plaintiff cannot rely on the negligent

entrustment exception to avoid immunity under the PLCAA.

(1)    **Plaintiff's negligence claims are not exceptions to the PLCAA and fail.**

Because none of the PLCAA's six enumerated exceptions apply, Plaintiff has no viable claims.  It does not matter that the claims assert general negligence or gross negligence theories.  The PLCAA expressly preempts *all* general negligence actions resulting from the criminal or unlawful use of a qualified product.  *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321-22 (Mo. 2016).

Some examples are instructive.  For instance, the Alaska Supreme Court has explained that the PLCAA's exceptions "do not include general negligence, and reading a general negligence exception into the statute would make the negligence per se and negligent entrustment exceptions a surplusage."  *In re Estate of Kim*, 295 P.3d 380, 386 (Alaska 2013).  The Ninth Circuit reached the same conclusion in *Ileto*, explaining that "Congress clearly intended to preempt common-law claims, such as general tort theories of liability[,]" including "classic negligence" claims.  *Ileto*, 565 F.3d at 1135-36.  Trial courts have followed suit.  The district court in *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46 (D.D.C. 2013), for example, held the PLCAA "unequivocally" barred the plaintiff's negligence claim.  *See also Phillips*, 84 F.Supp.3d at 1226; *Travieso v. Glock Inc.*, 526 F. Supp. 3d 533, 542 (D. Ariz. 2021) ("the provisions of the [PLCAA] indicate Congress intended to generally preempt common law torts.").  Like the courts before it, this Court should decline to create exceptions to PLCAA immunity that Congress plainly did not provide and, in fact, expressly sought to preclude through the PLCAA. *Ileto*, 565 F.3d at 1135-36 ("Congress clearly intended to preempt common-law claims, such as general tort theories of liability").

In short, Plaintiff's claims against Oasis Outback are barred by PLCAA.  Consequently, Plaintiff has no reasonable probability of recover against this defendant, and it is improperly

joined.

### d. Plaintiff's claims against Oasis Outback fail irrespective of PLCAA.

Setting aside the PLCAA, Plaintiff still has no reasonable probability of recovery against Oasis Outback because her claims against it fail under Texas law.

*First*, as discussed, Texas does not recognize a claim for negligent entrustment of a chattel. *Academy*, 625 S.W.3d at 30-31.  Regardless of whether the claim is negligence-based on the alleged negligent entrustment/sale of a firearm, ammunition or the sight, the claim fails as a matter of Texas law.  This Court is bound by *Academy*, which forecloses ***any theory*** seeking to imposing liability on Oasis Outback for negligent entrustment of the products listed at ¶ 438(a)-(e)—regardless of whether the product is a qualified product under the PLCAA.  *Academy*, 625 S.W.3d at 31.

*Second*, Plaintiff fails to allege any facts supporting the allegation that Oasis Outback's installation or adjustment of the sight at issue had any causal connection to the harms she suffered as a result of the Assailant's crimes—much less that Oasis Outback failed to follow any cognizable standard of care in installing or adjusting the scope.  Nor can she.  Because Plaintiff has not pleaded facts necessary to support any negligence theory with respect to Oasis Outback's installation or adjustment of the scope, that claim fails as a matter of law.

*Third*, and relatedly, Oasis Outback had no duty to prevent the Assailant's unforeseeable criminal conduct.  In Texas, there generally "is no duty to control the conduct of third persons absent a special relationship between the defendant and the third party, such as employer, employee, independent contractor, contractee, [or] parent child."  *Allen v. Wal-Mart Stores, LLC*, No. CV H-16-1428, 2017 WL 978702, *10 (S.D. Tex. Mar. 14, 2017) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990)).   Within these special relationships,

there is a presumed right and ability to control the conduct of third persons.  But in the absence of

such a relationship, there is no duty to control a third person's conduct that caused harm.  *Loram*

*Maintenance of Way, Inc. v. Ianni*, 210 S.W.3d 593, 596 (Tex. 2006).  Here, because Oasis Outback

did not have a recognized special relationship with the purchaser, it had no right or ability to control

the purchaser's criminal use of the at-issue products, and, therefore, it did not have a duty to protect

others from his criminal conduct.[4]

Absent a special relationship, Courts applying Texas law have refused to impose a duty to

control the conduct of another and ordered dismissal based only on the pleadings.  For example,

in *Allen*, *supra*, the court declined to recognize a duty on the part of Wal-Mart to protect the

plaintiff's decedent from harming herself despite an allegation that the harm was reasonably

foreseeable.  The plaintiff sued Wal-Mart, alleging negligence and negligence per se based on the

sale of an "abusable volatile chemical in the form of a compressed inhalant" that was ultimately

purchased and used by the plaintiff's decedent.  *Allen*, at 2017 WL 978702, at *2.  In response to

Wal-Mart's motion to dismiss, the plaintiff argued that Wal-Mart owed the decedent a duty to

refrain from this sale because it was "reasonably foreseeable" that the product would be "misused"

based on the nature of the chemical and the decedent's purchase of a towel that "could be used as

paraphernalia" to inhale the chemical.  *Id.* at *3.  In rejecting plaintiffs' argument, the court held

---

[4]  Even outside the context of traditional special relationships, Texas courts require the third party's conduct to be unquestionably the foreseeable result of the defendant's alleged negligence to impose a duty.  *See, e.g.*, *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311-12 (Tex. 1987) (tavern owed duty to not serve alcohol to a patron who it knew or should have known was intoxicated because "[t]he risk and likelihood of injury from serving alcohol to an intoxicated person whom the licensee knows will probably drive a car is as readily foreseen as injury resulting from setting loose a live rattlesnake in a shopping mall."); *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307, 308-11 (Tex. 1983) (holding that employer who sent an employee home in an "extreme state of intoxication" owed a duty to person harmed by employee's negligence).  The court in these cases imposed a duty on the tavern owner and employer to prevent another from driving while intoxicated because they had knowledge of both the person's intoxication and his intention to drive, and the foreseeable consequences of driving while intoxicated were not questioned.  Another example is the property-liability line of cases. *See Timberwalk Apts. v. Cain*, 972 SW2d 749 (Tex. 1998); *De Lago Ptrs. v. Smith*, 307 SW 3d 762 (Tex. 2010).

168028

that the plaintiff's allegations did not support a finding that it was reasonably foreseeable that the decedent intended to use the chemical product and the towel to harm herself.  *Id.* at *16.

Even if the common law duty question is answered by considering only whether the harm inflicted on Plaintiff was foreseeable, Texas courts hold that intentional criminal conduct is ***not*** foreseeable.  "Unlike alcohol, the sale of ammunition does not involve a product that impairs the user."  *Cowart v. Kmart Corp.*, 20 S.W.3d 779, 784 (Tex. App.—Dallas 2000, pet. denied) (ammunition seller could not foresee that a sale would result in intentional misuse of the ammunition); *Chapman v. Oshman's Sporting Goods, Inc.*, 792 S.W.2d 785, 788 (Tex. App.—Houston [14th Dist.] 1990, writ. denied) (holding intentional criminal conduct was not the foreseeable result of the sale of a handgun, even when to an underage buyer); *Holder v. Bowman*, No. 07-00-0126-CV, 2001 WL 62596 (Tex. App.—Amarillo Jan. 25, 2001, pet. denied) (similar).

The result here must be the same because Plaintiff fails to allege any facts to demonstrate that the purchaser's intentional criminal acts were foreseeable to Oasis Outback based on information available to its sales agent.  Plaintiff alleges only that Oasis Outback's owner questioned how the Assailant could afford the products he purchased. Ex. A-2. at ¶¶ 432-436.  She references excerpts from the Texas House of Representatives report on the Robb Elementary shooting that shoppers or so-called "store witnesses"—not any employee or agent of Oasis Outback—said the purchaser "appeared odd and looked like one of those school shooters" or was "giving off bad vibes."  *Id.*  But these allegations, even when taken as true, are not enough to show that Oasis Outback reasonably should have foreseen the Assailant's murderous intent.  *Twombly*, 550 U.S. at 570; *cf. Phillips*, 84 F. Supp. 3d at 1226 (no knowledge of criminal intent where Shooter purchased large quantity of ammunition).

Nor can the Court find the purchaser's crimes were foreseeable based simply on his "age"—under federal and Texas law, the eighteen-year-old Assailant legally purchased the firearm and ammunition at issue in this case. Therefore, age cannot be a foreseeability factor here.

In sum, Oasis Outback owed no duty to Plaintiff, nor could it reasonably foresee the Assailant's horrific actions. Plaintiff cannot maintain her negligence claims against Oasis Outback —however they may be described—as a result. And, because gross negligence must be predicated on a viable negligence claim, which does not exist in this case, this claim fails as well. *See Arana v. Figueroa*, 559 S.W.3d 623, 634 (Tex. App.—Dallas 2018, no pet.) ("A finding of ordinary negligence is a prerequisite to a finding of gross negligence."); *Rayner v. Claxton*, 659 S.W.3d 223, 258 (Tex. App.—El Paso 2022, no pet.) (same). Thus, Plaintiff has no reasonable probability of recovery against Oasis Outback.

### e.        Oasis Outback is improperly joined.

Plaintiff cannot recover against Oasis Outback. All of Plaintiff's claims are barred by the PLCAA and Texas law. Plaintiff cannot state a viable claim against Oasis Outback. Accordingly, Plaintiff has no reasonable probability of recovery against Oasis Outback, and it is improperly joined. All remaining Defendants are diverse from Plaintiff. Consequently, diversity jurisdiction exists and removal is proper.

### 3.        The forum-defendant rule is inapplicable because Oasis Outback is not properly joined.

Under the "forum-defendant rule," a suit cannot be removed if "any of the parties in interest ***properly joined and served*** as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2) (emphasis added). However,"[i]mproper joinder is a limited exception to the forum-defendant rule and the requirement of complete diversity." *New Life Assembly of God of City of Pampa, Tex. v. Church Mut. Ins. Co.*, No. 2:15-CV-00051-J, 2015 WL 2234890, at *3

(N.D. Tex. May 12, 2015) (citing *Cuevas v. BAC Home Loans Servicing, LP,* 648 F.3d 242, 249 (5th Cir. 2011)). The Fifth Circuit's standard for improper joinder specifically considers whether the in-state (forum) defendant was improperly joined to defeat diversity jurisdiction. *See Smallwood*, 385 F.3d at 573 (stating test for improper joinder "is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an ***in-state defendant***, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an ***in-state defendant***") (emphasis added); *Cuevas*, 648 F.3d at 249 (same, quoting *Smallwood*); *African Methodist Episcopal Church v. Lucien*, 756 F.3d 788, 793 (5th Cir. 2014) (same); *see also Taylor v. Cavender Buick of Tex. Ltd.*, No. SA-16-CV-724-XR, 2016 WL 6581353, at *1-3 (W.D. Tex. Nov. 7, 2016) (citing *Lucien* and denying motion to remand after concluding forum defendant was improperly joined).

This Court has repeatedly denied motions to remand after finding that a Texas defendant was improperly joined and complete diversity existed. *E.g.*, *Irma Blas v. Rosen*, No. DR-18-CV-66-AM, 2019 WL 5199284, at *7 (W.D. Tex. July 16, 2019); *ALGC, Inc. v. United States Liab. Ins. Group*, No. DR-17-CV-061-AM-VRG, 2018 WL 5733184, at *9 (W.D. Tex. Aug. 17, 2018), *report and recommendation adopted sub nom.*, 2018 WL 5733155 (W.D. Tex. Sept. 19, 2018); *Segura v. Gen. Motors LLC*, No. DR:14-CV-0077-AM/VRG, 2015 WL 13805702, at *4 (W.D. Tex. Sept. 30, 2015); *Rodriguez v. Wal-Mart Stores Tex., LLC*, No. DR-12-CV-50-AM/CW, 2013 WL 12393906, at *6 (W.D. Tex. Mar. 30, 2013). More recently, the Court confirmed the improper joinder doctrine extends to the forum-defendant rule. *Mimosa Properties, LLC v. Third Coast Ins. Co.*, No. DR-22-CV-008–AM/CW, 2023 WL 11691700, at *4 (W.D. Tex. Mar. 31, 2023).

As shown above, Plaintiff improperly joined Oasis Outback. Accordingly, the forum-defendant rules does not apply here to preclude removal.

### III.
### ALL OTHER DEFENDANTS EITHER CONSENT
### TO REMOVAL OR HAVE NOT YET BEEN SERVED

"[A]ll defendants who have been properly joined ***and served*** must join in or consent to the removal of the action."   28 U.S.C.  §  1446(b)(2)(A)  (emphasis  added).  The  consent  of  an improperly joined defendant like Oasis Outback is not required for removal.  *Id.*; *see Mauldin v. Allstate Ins. Co.*, 757 Fed. Appx. 304, 309 (5th Cir. 2018) (stating "this court has repeatedly made clear that a removing defendant 'need not obtain the consent of a co-defendant that the removing party contends is improperly joined'").  Nevertheless, Oasis Outback consents to this removal.  Ex. H.

Defendant Firequest International, Inc. consents to this removal.  Ex. I.

Defendants EOTech, LLC, Project Echo Holdings, LLC, and Koucar Management, LLC consent to this removal.  Ex. J and K.

Defendant Flash Co., Inc. has not yet been served in this case.  Ex. A-1.  A removing party need not obtain the consent of a defendant who has yet to be served.  *See Cadena v. ASI Lloyds*, No. SA-17-CV-01034-FB, 2018 WL 1904839, at *4 (W.D. Tex. Jan. 5, 2018), *report and recommendation adopted*, 2018 WL 1899750 (W.D. Tex. Feb. 13, 2018) (stating "because Alfaro had not been properly served at the time of removal, this Court should disregard Alfaro's Texas citizenship"); *Ahmed v. ASI Lloyds*, No. SA-17-CA-00336-FB, 2017 WL 9401067, at *2 (W.D. Tex. July 7, 2017), *report and  recommendation adopted*, No. SA-17-CA-336-FB, 2017 WL 9403301 (W.D. Tex. Aug. 30, 2017) ("At the time of removal, Tom Long had not been served. Defendants who have not been served by the time of removal need not consent."); *Boyle v. JP Morgan Chase Bank*, No. 4:13CV454, 2013 WL 6000462, at *3 (E.D. Tex. Nov. 8, 2013) ("Chase correctly asserts that a defendant not properly served need not consent to removal, and it is

Plaintiff's obligation to request a citation and ensure that the citation, along with the petition is served."); *Ebert v. Wells Fargo Bank N.A.*, No. A-13-CV-805 LY, 2013 WL 12308217, at *4 (W.D. Tex. Nov. 12, 2013) (stating "the consent requirement applies only to those defendants who have been served"). Plaintiff requested service on Flash Co., Inc. through the Texas Secretary of State. Ex. A-3  There is no record of the Texas Secretary of State forwarding the petition and citation to Flash Co., Inc. on file with the Uvalde County District Clerk. Ex. A-1. The same day this notice was filed, counsel for Daniel Defense called the Uvalde County District Clerk and confirmed there was no record on file showing Defendant Flash Co., Inc. had been served. Accordingly, Flash Co., Inc.'s consent to removal is not required.

## IV.
## DANIEL DEFENSE'S NOTICE OF REMOVAL IS TIMELY

Because the amount in controversy exceeds $75,000, and there is complete diversity of citizenship between Plaintiff and all Defendants (apart from improperly joined Oasis Outback), Daniel Defense is entitled to remove this case to the United States District Court for the Western District of Texas, Del Rio Division. Removal is timely sought because Daniel Defense filed this notice before it even received service. Ex. A-1. *See* 28 U.S.C. § 1446(b) (stating defendant must remove case within 30 days of being served); FED. R. CIV. P. 6(a)(1)(C). Additionally, it has been less than one year since this action was originally commenced. *See* 28 U.S.C. § 1446(c).

## V.
## CONCLUSION

For the reasons stated above, Daniel Defense, LLC f/k/a Daniel Defense, Inc., Daniel Defense Holdings, LLC, and M.C. Daniel Group, Inc. respectfully remove this action now pending against it from the 38th Judicial District Court, Uvalde County, Texas, to this Honorable Court for trial and determination of all issues.

168028

Respectfully submitted,

*/s/ David M. Prichard*
David M. Prichard
State Bar No. 16317900
E-mail:  dprichard@prichardyoungllp.com

David R. Montpas
State Bar No. 00794324
E-mail: dmontpas@prichardyoungllp.com

Prichard Young, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, Texas 78216
(210) 477-7400 [Telephone]
(210) 477-7450 [Facsimile]

***COUNSEL FOR DEFENDANT,***
***DANIEL DEFENSE, LLC F/K/A***
***DANIEL DEFENSE, INC.,***
***DANIEL DEFENSE HOLDINGS, LLC,***
***AND M.C. DANIEL GROUP, INC.***

168028

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of July 2024, I served the following counsel of record through electronic service as authorized by the Federal Rules of Civil Procedure:

Fidel Rodriguez, Jr.
RODRIGUEZ TRIAL LAW
231 W. Cypress Street
San Antonio, TX 78212

Sylvan S. Lang, Jr.
Meagan M. Gillette
Brian Dennis
LANG LAW FIRM, PC
11550 IH-10 West, Suite 273
San Antonio, TX 78230

Rogelio M. Munoz
THE MUNOZ LAW FIRM
231 S. Getty Street
Uvalde, Texas 78801

*/s/ David M. Prichard*
David M. Prichard

168028